UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No.: 2:16-cr-84-1 |
| ) | |
| ALISON GU, ) | |

## AFFIDAVIT OF MARK OETTINGER IN RELATION TO DEFENDANT'S COMPLAINT FILED PURSUANT TO 28 U.S.C. § 2255

NOW COMES Mark Oettinger, under oath, and hereby submits this Affidavit in connection with the above-entitled matter:

1. I was appointed to represent Ms. Gu on June 2, 2022. I represented her until her final revocation hearing on August 16, 2022. I also assisted her in preserving her appeal prior to her engagement of private appellate counsel. Based on a review of the Docket Report on PACER, I was her seventh appointed attorney. Others were appointed to represent her on the original charges, and on her first violation of supervised release. Each of the prior attorneys had either asked permission to withdraw, or had been asked by Ms. Gu to do so.

2. Attorney Shelkrot's Affidavit describes in detail the course of her representation of Ms. Gu. Attorney Shelkrot represented Ms. Gu in her original trial, which resulted in a conviction. During the course of the trial, Ms. Gu took the stand in her own defense, and was found by the Court to have committed perjury. She also called her three children as witnesses in her defense, including an adult son with autism, and was found to have suborned perjury in doing so.

3. After Ms. Gu was convicted and sentenced, and after she had completed her period of incarceration, she was charged in Connecticut state court with writing a bad check. That charge also led to a Petition for a Violation of Supervised Release (VoSR) in the instant

case. On the VoSR, Ms. Gu was initially represented by an Assistant Federal Public Defender whose Motion for Permission to Withdraw was granted...leading to my appointment.

4. The PACER record reflects that Ms. Gu has vacillated, over the years, between wanting new counsel and wanting to represent herself. As a result, during the bulk of my representation of Ms. Gu, I was given the role of "stand-by counsel," although at her final revocation hearing on August 16, 2022, she informed the Court that she wanted me to represent her in the more conventional sense for that particular hearing. The Court consented, and as a result, I presented argument.

5. During the course of my appointment, and notwithstanding my status as stand-by counsel, I was in very regular contact with Ms. Gu. This was in part due to the fact that she had concurrent check-fraud charges pending in Connecticut (with separate counsel there), as well as criminal charges in New Hampshire for obtaining two separate New Hampshire driver's licenses by fraudulently using the identities of deceased individuals. At the time of Ms. Gu's VoSR here in the District of Vermont, she had no lawyer in New Hampshire yet, since she had not yet been arraigned on those charges. That said, as I recall, the New Hampshire cases were in warrant status and...if not resolved...would have had an adverse impact on her USBOP classification. This is to say nothing of the complex "primary jurisdiction" issues that flowed from being a federal criminal defendant on pre-trial release with state criminal matters concurrently pending in two other states.

6. From the context of my limited "stand-by" role, we worked very hard to address the root cause of Ms. Gu's underlying inability to live up to the expectations of the legal system in which she found herself enmeshed. We helped her pursue a definitive psychiatric diagnosis, which I can share in greater detail if the Court deems it necessary. While I believe that Ms. Gu has waived her attorney-client privilege through the filing of her 2255, I am loathe to share highly personal medical information unless it is deemed necessary. I spoke with several of her mental health providers, and also with a

practitioner of Traditional Chinese Medicine (TCM) (Dr. Ming Wu) with whom Ms. Gu claimed to have been studying...hoping to become a TCM practitioner herself. In my opinion (and that of her mental health providers), Ms. Gu's future success requires long-term counseling and support.

7. Ms. Gu's 2255 specific claim of ineffective assistance against me (which can be found in the final paragraph of her 13-page 2255) is that I did not submit two letters of reference that she claims were sent to me either by her or by the authors. The first letter was purportedly from her father. Inexplicably, its focus was on Ms. Gu's New Hampshire prosecution for obtaining fake driver's licenses. Ms. Gu's father's letter was therefore entirely unhelpful, and if anything, counterproductive. As such, I chose not to submit it in connection with Ms. Gu's sentencing. The second undated letter was purportedly from Dr. Wu. We have emails in the file dated shortly before Ms. Gu's sentencing in which we asked about the status of the preparation of that letter (which we were expecting). Ms. Gu responded that both she and Dr. Wu had conflicting engagements that might prevent the completion of the letter (including the necessary translation) in time for sentencing. The letter purporting to be from Dr. Wu is in our file. It is undated, and our best recollection is that it was received either after the sentencing or too late to be considered at the hearing. That said, the fact that Ms. Gu was receiving psychiatric and other "wellness" treatment from a number of providers was made known to the Court at each stage of proceeding in which I was involved. See, for example, Docket Entries 374 and 386.

8. It is important to keep in mind that I was only stand-by counsel during most of my representation of Ms. Gu. That said, we worked tirelessly to help her find the supports that she needs in order to live a law-abiding life. We were cautious because of the prior findings of perjury and subornation. We were also mindful of the reports of prior counsel related to Ms. Gu's issues around veracity. We never faulted her for her claims or her actions, even when they appeared to be contradicted by irrefutable facts. Her tumultuous childhood, her cultural transplantation, her marriage to an abusive individual, her single parenting of three children (including one with autism and behavior-related challenges),

all provide context for her actions. We never judged her as a result. We are, however, officers of the Court, with a duty to take care not to inadvertently violate our duty of candor to the Court while representing our client zealously.

9. I hope that this Affidavit answers the questions that the Court may have regarding my small part in this multi-year prosecution. Should the Court have questions, or need further information, we will be happy to oblige.

DATED at Burlington, Vermont, this 29th day of May, 2025.

Respectfully submitted,

Mark D. Oettinger, Esq.
Former Attorney for Alison Gu
126 College Street, Suite 400
Burlington, VT 05401
(802) 540-0250
moettinger@mblawoffice.com

## NOTARIZATION

STATE OF VERMONT
COUNTY OF CHITTENDEN, SS.

At Burlington, in said County and State, this 29th day of May, 2025, personally appeared Mark Oettinger, personally known to me, and he acknowledged that this Affidavit, by him sealed and subscribed, was his free act and deed, and he swore to the truth of all of the factual allegations contained herein.

Before me: _____
Notary Public
My Commission Expires: 1/31/27

Notary Public State of Vermont
Nancy L. Benson
My Comm. Expires 01/31/2027
Commission
☆ No. 1570004544 ☆